IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CAROL LONG, | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 11-00476-KD-C |
| ALORICA, INC., f/k/a RYLA TELESERVICES, INC., | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Carol Long brings her first cause of action for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq,* and her second cause of action for breach of employment contract. (Doc. 1). This action is now before the Court on the motion for partial summary judgment, suggested determinations of fact and law, brief, and exhibits filed by plaintiff Carol Long, the memorandum in response, exhibits, and response to Long's suggested determinations of fact and law filed by defendant Alorica, Inc., and Long's reply (docs. 33, 38-39, 41); the motion for summary judgment, memorandum in support, exhibits, and the suggested determinations of fact and conclusions of law filed by Alorica, Long's response and exhibits and Alorica's reply (docs. 44-46, 48, 50); and Long's motion to strike and Alorica's response (docs. 40, 43).

I. Long's motion to strike

Alorica submits the declaration of Human Resources Manager Khadijah Salaam, the declaration of Associate Director Steven Kramer and the declaration of Associate Director Sherita Tuck-Diop. (Docs. 38-2,3,4, Exhs. B-D) Long moves to strike these declarations on basis that Alorica did not identify these individuals in the initial disclosures or any supplement

and therefore, should not be allowed to use their testimony (doc. 40).  As to Salaam, Long argues that she did not work at the Saraland location until after Long stopped work and therefore, does not have personal knowledge.  Alorica argues that Kramer was identified in its response to Long's first discovery requests and that Long knew of Salaam because she attended the settlement conference.  Alorica states that it was unable to locate or contact the individuals previously disclosed and had to locate other witnesses, Salaam and Tuck-Diop, who could provide the relevant information to rebut Long's motion for partial summary judgment.  Alorica also argues that its failure was harmless and not prejudicial because Long did not depose any of the persons previously identified.

Upon consideration, the motion to strike is DENIED.  Rule 37(c)(1) addresses the failure to disclose or supplement and provides in relevant part, as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1)

In this circumstance, Long did not depose any of the individuals identified by Alorica and has not been prejudiced by the use of declarations of different individuals.  Also, any failure to identify was substantially justified.  The witnesses previously identified and disclosed were no longer employed and could not be located at the time Long's motion for partial summary judgment was filed. Therefore, Alorica obtained declarations from employees currently employed and with personal knowledge of the facts and information necessary to oppose Long's motion for partial summary judgment. Additionally, Kramer was disclosed in the responses to discovery.  Although Salaam did not work at the Saraland location at the time Long worked at the Saraland location, her declaration as to her personal knowledge based upon review of Ryla's

general policies and procedures in place before Alorica and Ryla merged, is not due to be stricken.

II. The cross motions for summary judgment

    A. Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)&(B).

The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark,* 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id*. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and

3

making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-1609 (1970). However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2552). Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F. 3d 1328, 1331 (11th Cir. 2005); *Gerling Global Reins. Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001). The Eleventh Circuit has held that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted). Thus, "'[w]hen both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.'" *Muzzy Products, Corp. v. Sullivan Indus., Inc.*, 194 F. Supp. 2d 1360, 1378 (N.D. Ga. 2002) (quoting *Gart v. Logitech, Inc.,* 254 F.3d 1334, 1338-1339 (Fed. Cir. 2001)).

B.  <u>Statement of the law – Long's FLSA claim</u>

The FLSA requires that employers pay covered employees a statutory minimum wage for each hour worked. 29 U.S.C. § 206(a).  Employers must also pay covered employees a rate of one and a half times their usual hourly rate of pay for each hour in excess of forty hours worked in a week. 29 U.S.C. § 207(a).   Therefore, "[u]nder the FLSA, an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007); 29 U.S.C. § 207(a)(1).  "A person is employed if he or she is suffered or permitted to work." *Id.;* 29 U.S.C. § 203(g).  "It is not relevant that the employer did not ask the employee to do the work.  The reason that the employee performed the work is also not relevant. '[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.'" *Id.*, (quoting *Reich v. Dep't of Conservation and Nat. Res.,* 28 F.3d 1076, 1082 (11th Cir.1994) (citing 29 C.F.R. § 785.11)). "It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment. . . . The employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and '[e]mployees seldom keep such records themselves.'" *Id.*, at 1315.

The parties do not dispute that Long is covered by the minimum wage-maximum hour provisions of the FLSA.  Therefore, to prevail on her claim, Long must prove that she was "suffered or permitted to work without compensation." *Id.*, at 1314 (citing 29 U.S.C. § 201 *et seq*.)  In that regard, "[c]ourts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work. *Id.*, at 1314-1315 (citing *Reich,* 28 F.3d at

1081-82 and 29 C.F.R. § 785.11 (interpreting the "suffer or permit to work" requirement to mean that an employer violates the FLSA when it "knows or has reason to believe that he is continuing to work and the time is working time."). Although Long has this burden, "[t]he remedial nature of this statute and the great public policy which it embodies ... militate against making that burden an impossible hurdle for the employee." *Id*., at 1315 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). The Eleventh Circuit has explained that if an employer's records are in question "and the employee cannot offer convincing substitutes",

> [t]he solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

*Id*., at 1315-1316.

"[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*., at 1316. "The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id*., (citing *Anderson*, at 687-88, 66 S.Ct. 1187). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id*.

C. Factual background [1]

---

[1] "[W]hat is considered to be 'facts' at the summary judgment stage may not turn out to be the

Carol Long was a Customer Service Representative (CSR) for Ryla Teleservices, Inc. at its Saraland, Alabama facility from August 19, 2009 until July 22, 2011.  Ryla Teleservices, Inc. merged with Alorica as of January 1, 2012.  Long's duties included handling customer service calls for Verizon Wireless.  She was a non-exempt hourly employee.  The minimum wage and maximum hour provisions of the FLSA apply to Long.  Except for her training period, for which Long makes no FLSA claim, Long's rate of pay was $10.00 per hour. (Doc. 33-1, ¶1-5.)  Long alleges that she worked off-the-clock "completing research on Verizon customer cases" and "reading company e-mails containing updates on Verizon products and services" . . . "before her shift began and during her uncompensated meal break" but was not compensated for this overtime work. (Doc. 33-1, ¶ 8.)

Long also alleges the following facts in support of her burden to show that Alorica either knew or should have known of her "off the clock work":  Alorica had rules that restricted access to the computer system.  Specifically, Management employees known as "workforce management" enforced a rule that CSRs could not log-in to the time-keeping system more than five minutes before their shift and would instruct the CSRs to log out if the rule was violated. (Doc. 33-2, p. 3, n. 4, p. 5).  One time, Long logged-in eight minutes before her shift and was told to log out by a workforce management employee.  (Doc. 33-2, p. 5, n. 8)  When she was working before her shift and during lunch, her supervisors would ask whether she was working and whether she was logged-in.  Long would respond that she was working but was not logged-in and the supervisors would say "great" or "oh, good."  (Doc. 33-3, p. 38-39, Long deposition)

After logging-in to the timekeeping system, Long and other CSRs were not allowed to

---

actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

7

use the email system for more than one minute after a customer service call and could not use the email system to read updates to Verizon products and services.  Long received about ten emails per day about Verizon products and services, but because she could not use the email system during her scheduled shift, she had to read these emails off-the-clock.  Long's request to complete customer case research "on the clock" was denied on two specific occasions.  She was instructed to complete research requiring more than one minute of "after call work" on her own time. (Doc. 33-2, p. 4-5)

Long states that the computer system had an icon for "after call work" which would pause incoming calls and allow the "CSR additional time to annotate an account after a customer call" but the supervisors told the CSR's not to use that function. When she or any CSR stayed in after-call work, "an announcement would go out over the entire call center that Carol Long was in after-call work". (Doc. 33-2, p.4, n.6)  Then her supervisor would tell her to get out of after-call work and threaten that Long "could be 'written-up' for using the 'after-call work.'" (*Id*.)

Long "specifically recalls complaining to David Vick approximately ten to fifteen times verbally.  David Vick responded by telling her to complete her work 'on her own time.'  She also complained to another supervisor named Rebecca Nelson who tried to help.  However, Rebecca Nelson also allowed her to perform some of her duties off the clock as well." (Doc. 33-3, p. 46-47, Long's response to Interrogatory 9)  Long explained that "[a] lot of times when we had case research, there was times I went to my supervisor and I said, I need to look this and this and this up for this person and get this approved.  I was told, "do it on your own time." (Doc. 33-3, p. 29, Long's deposition)

Long often arrived early because she had to drive 30 miles to work and had to factor in traffic, and sometimes when she arrived early or during lunch, she would wait for her shift to

start, check Human Resource job postings, get a glass of water, and go to the restroom. (Doc. 45, p. 19)  Long estimates that she "arrived to work an hour early at least three days per week" when she worked four ten-hour shifts and that she "arrived to work thirty minutes to an hour early four days per week." (*Id*., p. 2)  She also estimates that she "regularly worked during her unpaid lunch break, cutting her lunch break short by 15 to 30 minutes". (*Id.*)  Overall, Long estimates that she worked an average of 60 minutes of uncompensated time when she was scheduled for a ten-hour shift and an average of 56 minutes of uncompensated time when she was scheduled for an eight-hour shift.  (Doc. 33, ¶ 15)

After her shift, Long spent approximately 15 minutes each day "logging off of the system, taking customer documents to the shredder and exiting the facility through Ryla's security system." (Doc. 33-2, p. 3, n.3)  Long tried to keep records but her attempt was frustrated by Alorica's policies which prevented having paper and pens at her desk and prohibited all employees from taking any papers out of the building. (Doc. 33-2, p. 5)

In response to Long's claims, Alorica alleges the following facts:  Alorica used two timekeeping systems: System Track for Customer Service Representatives and Time Track for CSR's in training. (Doc. 38).  System Track was the "regular time clock" for the CSRs and recorded time spent on the computer and time spent on the telephone. (Doc. 39, p. 5, Alorica's response to Long's suggested determinations of fact)  CSRs were expected to clock in to work and open the "Web Powered Agent" (WPA) program on their computers.  At that point, System Track began keeping time records.  Next, CSRs were expected to log-in to the "SIP" phone program (the "switch") which kept time for inbound and outbound calls.  CSRs could stop incoming calls by entering an AUX code on their phone.  CSRs were allowed to enter a "Call Work" or a "Meeting" AUX code when reviewing emails or researching customer cases. (Doc.

38, p. 13-14)  CSRs were also instructed not to work during lunch breaks and required to leave the call center floor for the duration of their lunch period. (Doc. 38, p. 14)

Alorica's policies and procedures provided for payment of overtime and in addition to the timekeeping system, the CSRs were instructed to check their time each day in the MyRyla intranet and report any discrepancies in hours worked to a supervisor.  Also, if a CSR found an error in a paycheck, they could request a manual check and a supervisor would investigate the discrepancy.  Alorica did not limit the type of discrepancies that could be addressed.  Also, as to complaints concerning job-related issues, Alorica included an issue resolution process in the employee handbook and informed the CSRs of that process.  (Doc. 38, p. 10-12; (Doc. 45, Docs. 45-2 -3-4, Kramer, Salaam and Tuck-Diop declarations; Doc. 45-5, Exhibit E, employee guide)

Alorica states that "occasionally" but not on a "daily basis", CSRs would make "outgoing calls, research customer case, and review emails."  (Doc. 45-3, Kramer declaration)  Alorica estimates that "[r]esearching a case took no more than 15-20 minute to complete" and "[r]eviewing emails took no more than 5 – 6 minutes", and "[a]ll of these tasks could be performed between calls." (*Id;* Doc. 45, Exh. D, declaration of Tuck-Diop)  Alorica states that Long was not required or instructed to work off-the-clock but instead was instructed to log in to the timekeeping system and perform all work while in the system. Long and the CSRs could suspend incoming calls by using either a "call work" or "meeting" code on their phones and complete their customer service work during their shifts. (Doc. 45, Docs. 45-2-3-4, Kramer, Salaam and Tuck-Diop declarations)

D.  Analysis

In the motion for partial summary judgment, Long argues that her deposition testimony and discovery responses are direct evidence that she worked overtime hours without

10

compensation and that her supervisors had actual knowledge that she was working overtime before her shift and during lunch.[2] In response to Alorica's motion for summary judgment, Long relies upon her testimony, discovery responses, and the declaration of her former supervisor Rebecca Nelson. Nelson states that she personally observed Long working off-the-clock, both before and after her shift and during lunch. (Doc. 48-1). Nelson also states that other managers were aware of the CSRs working off-the-clock and that while there were policies and procedures prohibiting this work, those were not followed by the CSRs or their managers. (*Id*.)

Alorica argues that Long cannot support her motion for partial summary judgment or defend Alorica's motion by relying upon her conclusory deposition testimony and interrogatory responses. Alorica also argues that Nelson's declaration is vague, conclusory, not credible and not sufficient evidence to support Long's allegations or to rebut the declarations of Alorica's employees Kramer, Salaam and Tuck-Diop.

On cross motions for summary judgment, the Court "must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.'" *Muzzy Products, Corp.*, 194 F. Supp. 2d at 1378. Applying this standard, the Court finds that the parties' declarations and Long's testimony establish that there is a genuine issue of material fact as to whether Alorica had knowledge of Long's off-the-clock work and whether the time Long worked off-the-clock was more than *de minimis*.[3] In this circuit, in an FLSA action, an employee need not support their testimony with time records or other

---

[2] Long did not move for summary judgment as to her claim for uncompensated post-shift time. However, Alorica moved for summary judgment as to all of Long's claims.

[3] Alorica does not dispute that Long worked off-the-clock. Instead, it argues that she did so voluntarily without instruction from management and without following company policy for reporting her overtime. Alorica does argue that to the extent Long worked off-the-clock, that work was de minimis and much of her off-the clock time was not spent on work, i.e., checking Human Resource's website or waiting at her computer for her shift to begin.

documentation.  *See Allen*, 495 F. 3d at 1316, 1317-1318 (addressing plaintiffs' argument that the supervisors frequently told them they would not be compensated for overtime and told them not to report overtime and finding that "the Board was not entitled to summary judgment based on Plaintiff's lack of documentation and inability to state with precision the number of uncompensated hours they worked and the days on which that work was performed."); *Barreto v. Davie Marketplace, LLC*, 331 Fed. Appx. 672, 677 (11th Cir. 2009) (finding that the "plaintiff's deposition testimony created genuine issues material fact concerning his job duties" and that summary judgment was not appropriate).  Thus, by way of her testimony and interrogatory responses, and Nelson's declaration, Long has produced "sufficient evidence" from which a reasonable inference could be drawn in support of Long's allegations that she worked off-the-clock and Alorica had knowledge of that work. *Allen*, at 1318.  Moreover, Alorica has provided the declarations of Kramer, Salaam, and Tuck-Diop, and drawing all reasonable inferences therefrom, the declarations are sufficient to create a genuine dispute of material fact as to whether Long's supervisors had knowledge and whether the amount of time Long alleges that she worked off-the-clock was de minimis.

Thus, in this circumstance, deciding the issues on summary judgment would require the Court to weigh the credibility of the witnesses.  In that regard, "[i]t is a hornbook principle that it is not proper for a district court to assess witness credibility when considering a motion for summary judgment as such determinations are reserved for the jury." *Hernandez v. MB Florida Ltd. LP,* 2012 WL 3848556, *3 (S.D. Fla. Sept. 5, 2012) (finding that Hernandez had "directly disputed all of the evidence Grand Beach uses in support of its argument that Hernandez managed the housekeeping department, supervised other employees, and recommended the hiring and firing of others.") (quoting *Allen–Sherrod v. Henry County Sch. Dist.,* 248 Fed. Appx.

145, 147 (11th Cir. 2007) (citations omitted)); *see also Brown v. Gulf Coast Jewish Family Services*, 2011 WL 3957771, *7 (M.D. Fla. Aug. 9, 2011) ("any inconsistency or uncertainty in an employee's testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider.") (citations omitted).

 III.  Conclusion

For the reasons set forth herein, Long's motion for partial summary judgment is DENIED and Alorica's motion for summary judgment is DENIED.

DONE and ORDERED this the 10th day of October, 2012.

/s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE